IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

$43,345.00 IN UNITED STATES
CURRENCY,

Defendant.

Civil No. 8:18CV500

**COMPLAINT FOR FORFEITURE *IN REM***

The United States of America, for its cause of action against the Defendant pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

**Nature of the Action**

1.     This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

**The Defendant *In Rem***

2.     The Defendant property consists of $43,345.00 in United States currency seized from Brittany Burton-Hipps on May 2, 2018, during a traffic stop on eastbound Interstate 80 near 84th Street, in Omaha, Nebraska. Ms. Burton-Hipps, the sole occupant of the rental car, was identified from her Illinois driver's license. The U.S. Marshals Service currently has custody of the Defendant property at Omaha, Nebraska.

debris or potholes in the lane.  Woodward activated his emergency lights and conducted a traffic stop on eastbound Interstate 80 near 84th Street, Omaha, Nebraska.

8.     Woodward approached the silver Ford Focus and made contact with the driver. Woodward asked the driver for her license, registration and insurance.  The driver, identified as Brittany Burton-Hipps, said she rented the car and she said she had a picture of her rental agreement on her phone.

9.     Woodward explained to Burton-Hipps that he stopped her because she was following the car in front of her too closely and that she had crossed the white hash line to the right.  He asked if she was feeling okay. Burton-Hipps stated that she was fine.

10.    Woodward asked her where she was going.  Burton-Hipps said she was traveling back to Chicago, Illinois, where she lives.

11.    Woodward asked Burton-Hipps where she was traveling from, and she said she was traveling from Los Angeles, California where she was visiting a friend.  Woodward asked how long she had stayed in L.A., and she said three days.

12.    Woodward asked if Burton-Hipps drove to L.A., and she said that she took a flight to L.A.  Woodward asked her why she did not fly back to Chicago, and she said that she just did not want to.  Burton-Hipps said she was nervous to fly after the Southwest stories and was even more nervous flying Spirit Airlines.

13.    Reviewing a picture of the rental agreement on her phone, Woodward noticed that Burton-Hipps paid a high amount for the one way rental.  Burton-Hipps explained that she likes to take pictures when she drives. Woodward asked her how much she spent on the rental and she exclaimed, "Too much."

3

14.     Woodward asked Burton-Hipps if she had any luggage with her, and she said she had one bag in the trunk.

15.     Woodward asked Burton-Hipps if her trip was a last minute trip or if she had it planned out.  She replied that it was a last minute trip.

16.     Woodward asked her if she stayed at a hotel or with her friend, and she said she stayed with her friend.

17.     Woodward asked her what she did for a living and she stated that she is an independent contractor and does modeling/bottle service.

18.     Woodward told Burton-Hipps that she was going to receive a verbal warning and asked if she had any more questions and she, replied no.  He asked her if he could ask her a couple more questions, and she said yes.  Woodward explained that her itinerary was not normal and explained the reasons why.  He asked her if she had any illegal items in her car such as illegal drugs, weapons or large amounts of money, and Burton-Hipps said no.

19.     Woodward asked Burton-Hipps if he could search her car, and she said that he could, but seemed hesitant to give consent.  Woodward explained to her that she could deny consent.  Burton-Hipps then said that she would like to deny consent.

20.     Woodward explained to Burton-Hipps that due to the suspicious story that he was going to deploy his dog around the car.  Burton-Hipps was silent for several seconds and then stated "Can I be honest with you?"  Woodward said that he would appreciate it if she was.  Burton-Hipps admitted that she has a confidential contract from an investment that she made.  She explained that the investment is with a cannabis industry and that she was given cash.  She said that an investor had attempted to travel with a large amount of cash and that TSA

4

confiscated the money.  She said she could not take the chance of the money being confiscated, and decided to drive with the money in the car.

21.     Woodward asked how much cash was in the car.  She stated forty-two thousand ($42,000.00) and that it was an initial payment. He asked her to sit in his cruiser.

22.     When Woodward began to remove his certified police drug detection canine, Loki, out of the patrol car, Burton-Hipps admitted that there was marijuana in the rental car.

23.     Woodward then deployed Loki, who is certified to indicate to the odor of marijuana, cocaine, heroin and methamphetamine, on the rental car.

24.     Loki alerted to the odor of a narcotic to the trunk area of the rental car by standing with his front paws on the back of the car and staring at the back of the car, thus indicating to the presence of a narcotic emanating from the back of the car.

25.     Woodward began searching the car and found a large brown bag.  Inside the bag, Woodward located several clothing items. Woodward removed the clothes and found a large heat sealed bag containing suspected marijuana. Under the marijuana Woodward located two manila envelopes that contained several bundles of U.S. currency in each envelope.

26.     Law enforcement transported Burton-Hipps and the rental car to the Douglas County Sheriff's Office K9 Building.

27.     Woodward read Burton-Hipps her Miranda rights and asked her if she was willing to talk to Woodward regarding the currency. She stated that she was willing to speak to Woodward without an attorney.

5

28.     Woodward asked Burton-Hipps how she obtained the money. She stated that a man named John Farris gave her the money from an investment that she made through Farris' cultivation centers.

29.     Woodward asked what Farris cultivated. Burton-Hipps said that Farris grows marijuana. She said that the marijuana located in the trunk of the car was not related to the money and that she had purchased the marijuana from a different place for her brother who suffers from schizophrenia. Burton-Hipps said that she saved her money over the years and wanted to invest the money so that she could take care of her family. She claimed that Farris contacted her and told her to pick her money up and that was the main reason for her trip to California. Burton-Hipps again stated that she did not want to take the chance of TSA confiscating her money and that she was just going to take the chance and drive the money back to Chicago.

30.     Woodward advised Burton-Hipps that he was going to seize all of the money located inside of the car except for the money in her purse. Her cell phone, marijuana and documents stating where she had received the money were also seized in addition to an extra bundle of U.S. currency located in a camera bag that was in the trunk of the car.

31.     Burton-Hipps was issued a citation for possession of marijuana more than an ounce less than a pound.

32.     Before counting the currency, the bundles were subjected to a discretionary sniff in the Douglas County Sherriff's K9 Office. Woodward and Loki conducted the sniff. The dog gave a positive indication to the odor of controlled substance coming from the currency.

6

33.    Law enforcement counted the currency in the two manila envelopes.  Each
envelope contained twenty-one thousand dollars ($21,000.00) in twenty dollar bills totaling
forty-two thousand dollars ($42,000.00). The single bundle totaled one thousand three hundred
and forty-five dollars ($1,345.00) for a combined total of forty-three thousand three hundred and
forty-five dollars ($43,345.00).

### Claim for Relief

WHEREFORE, the United States of America prays the Defendant property be proceeded
against for forfeiture in accordance with the laws, regulations and rules of this Court; that due
notice be given to all interested parties to appear and show cause why forfeiture should not be
decreed; that the Defendant property be condemned, as forfeited, to the United States of America
and disposed of according to law and regulations; that the costs of this action be assessed against
the Defendant property; and for such other and further relief as this Court may deem just and
equitable.  The United States requests that any trial occur in Omaha, Nebraska.


UNITED STATES OF AMERICA,
Plaintiff

JOSEPH P. KELLY
United States Attorney


By:    s/ Amy Blackburn
AMY B. BLACKBURN (MO#48222)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE  68102-1506
Tel:  (402) 661-3700
Fax:  (402) 345-5724
E-mail:  amy.blackburn@usdoj.gov

## **VERIFICATION**

I, Deputy, Andrew Woodward, hereby verify and declare under penalty of perjury that I am a Deputy Sheriff with the Douglas County Sheriff's Office, that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 7 through 33 of the Verified Complaint are true to the best of my knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of Douglas County and the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Deputy of the Douglas County Sheriff's Office. verify and declare under penalty of perjury that the foregoing is true and correct.

Dated October 22, 2018

Andrew Woodward
Deputy Sheriff
Douglas County Sheriff's Office

8